# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANNEE CUNNINGHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-803-D |
| | ) |
| GLOBALSOURCE, INC., | ) |
| d/b/a SKILLED TRADE | ) |
| SERVICES, INC., and | ) |
| HOWARD CHASE, | ) |
| | ) |
| Defendants. | ) |

## ORDER

The present case arises from Plaintiff Annee Cunningham's (Cunningham) employment as an administrative assistant with Defendant Globalsource, Inc., d/b/a Skilled Trade Services (STS), where she alleges she was subjected to a hostile work environment due to sexual harassment by her immediate supervisor, Defendant Howard Chase (Chase). Before the Court is STS's Motion for Summary Judgment [Doc. No. 42]. Cunningham has filed her response in opposition [Doc. No. 45] and STS replied [Doc. No. 48]. The matter is fully briefed and at issue.

## BACKGROUND

The following material facts are either uncontroverted, or deemed admitted, and are viewed in the light most favorable to Cunningham. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220 (10th Cir. 2015). Immaterial facts, facts not properly supported

by the record, and legal arguments or conclusions were not considered. *See, e.g., Chavez v. County of Bernalillo*, 3 F. Supp. 3d 936, 949 n. 4 (D.N.M. 2014).

STS is a skilled labor staffing company based out of Delafield, Wisconsin. At the time its Motion was filed, STS employed less than twenty permanent, in-house employees. STS had an Oklahoma City office from approximately December 2013 through approximately April 25, 2014. Chase was hired as an "at-will" employee in or around mid-December 2013.[1] Chase was employed as the Regional Vice President and fulfilled roles of both Branch Manager and Account Manager. Cunningham was hired as an at-will employee on around March 24, 2014 as a recruiter/administrative assistant to Chase.

At the time of Cunningham's employment, STS had an Employee Handbook that outlined the company's policy against sexual harassment. It instructed employees to "immediately report the harassment to the immediate supervisor, the Controller or any Company officer." *See* Employee Handbook at 4 [Doc. No. 42-7]. The handbook stated it was the employee's duty to report harassment in order to help create a safe workplace for all employees. *Id*. It also stated STS would "promptly and thoroughly investigate complaints and take all necessary and appropriate

---

[1] Under Oklahoma law, "employers are free to discharge at-will employees in good or bad faith, with or without cause," unless the termination violates public policy. *Trant v. Oklahoma*, 874 F. Supp. 2d 1294, 1303 (W.D. Okla. 2012) (quoting *Darrow v. Integris Health, Inc.*, 2008 OK 1, ¶ 3, 176 P.3d 1204, 1210).

2

corrective action to prevent such conduct from occurring or reoccurring in the workplace." *Id*. On or around December 18, 2013, Stephanie Gramling, STS's President and Chief Executive Officer, provided Chase with copies of STS's anti-discrimination and anti-harassment policies, including policies prohibiting sexual harassment and retaliation. Although the handbook stated "[employees] will be asked to sign and return a duplicate copy of the last page of the Handbook, confirming that [they] have read the Handbook, understood the content and have received a copy," Employee Handbook at 2, STS did not have a signed acknowledgement from Cunningham indicating receipt and/or review of the document. Although she did not have a copy of the handbook, Cunningham nonetheless believed she could bring any complaints of harassment to either Gramling or Maribel Rodriguez, who Cunningham thought worked in the human resources department.

Cunningham and Chase were the only two employees at STS's Oklahoma City office throughout the duration of her employment. Approximately two weeks after her first day at work, Chase told Cunningham that he and his wife had not had sex in the past two years. After that incident, for over two weeks, Chase made comments about his wife to Cunningham every day.[2] After Chase made another

---

[2] Such comments included: (1) Chase saying his wife had quit cooking for him; (2) Chase saying his wife would not call him at work and refused to take calls from him

comment about his sex life, Cunningham told him that it was not any of her concern and asked him to stop telling her such things, and Chase agreed to stop. Cunningham did not report Chase or make any complaint about his comments. However, Chase began to make comments about Cunningham's appearance, saying such things like "You look very gorgeous today," and "You're such a tight little thing." Chase also asked Cunningham if she had a boyfriend. When she said that she did, Chase responded, "Well, he sure is a lucky guy to have a – a woman as beautiful as you." These comments occurred over the course of two to three days. Cunningham did not report Chase or make a complaint about his comments.[3]

On April 23, 2014, Cunningham alleges that after being called to his office, Chase tried to force himself upon her. She describes the incident as follows:

> When I went around the corner into his office he was laying on the floor. He had his shirt off and his socks and shoes off, and he asked me to – I can't remember, either walk on his back or use my fist and push on his back around his shoulder blades. … As he's grabbing my left ankle, he's also coming – bringing his body up. And he turns and grabs my other one, and pulls me down. And I – when I went down, I went down stomach – like face first. And he flipped me over, and he was on his knees over me. And he was saying, "It's okay. We're going to have fun. It's okay." And I said, "No. No, this is not okay. Get off of me." And then he stopped saying anything. And his hand went up my shirt,

---

while he was working; (3) Chase telling Cunningham that he and his wife had gone out for dinner the previous night; and (4) Chase referring to his wife as a "bitch."

[3] The record also indicates that at one point during her employment, Chase gave five to six karate lessons to Cunningham. Although her family members thought it was strange, Cunningham testified that she "didn't think anything of it" and she neither reported Chase nor asked him to give another lesson.

and he started to pull my pants down. … He got my pants down just enough to where he could see – before I got up and ran. I don't – I don't know how I got up. I don't know if I kicked him, or if he let me up, I don't know. But I got up, and I grabbed my purse, … [a]nd I ran out of the building. He proceeded to chase me out of the building. … And as soon as I got in the car, I threw my stuff in the seat and I hit the lock button. Right as I hit the lock button he was trying to open my car door. He went to every single door and tried to open it.

Cunningham filed a police report and later called Gramling to make a complaint of sexual harassment. Cunningham told Gramling that Chase had sexually assaulted her, chased her out of the building, and had been arrested. Pursuant to advice from the police, Cunningham did not provide any additional details to Gramling about the incident. This was the first time Cunningham reported to Gramling or anyone else at STS that Chase had harassed her.

Although she expressed hesitation about returning to the office, Cunningham expressed her desire to keep her job. In response, Gramling said, "I don't know what to do about that, so you might as well just settle for unemployment." Cunningham then asked, "So that means you're letting me go?" to which Gramling said "Basically. File for unemployment." Following the advice of counsel, Chase refused to answer Gramling's questions regarding the incident.[4] STS permanently closed the Oklahoma City office by April 30, 2014. It stated the office was being closed because it was not financially sustainable.

---

[4] Chase has also invoked his Fifth Amendment right against self-incrimination in these proceedings. *See* Joint Status Report and Discovery Plan at 3, 6 [Doc. No. 19].

Cunningham sued STS and Chase in Oklahoma County District Court for gender discrimination, sexual harassment, hostile work environment, and retaliation.[5] STS timely removed the action to this Court. STS contends it is entitled to summary judgment on Cunningham's claims for three reasons: (1) under the undisputed facts, Cunningham cannot establish a prima facie case for hostile work environment against STS; (2) under the undisputed facts, Cunningham cannot establish a prima facie case for retaliation; and (3) under the undisputed facts, Cunningham cannot establish gender discrimination.

## STANDARD OF REVIEW

Rule 56(a), Federal Rules of Civil Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter asserted, but to determine whether there is a genuine issue for trial. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.

---

[5] Cunningham stated her claims arose under "the Fourteenth Amendment of the United States Constitution, Title VII and Oklahoma Public Policy." Petition, ¶ 4 [Doc. No. 1-1].

1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id*.

Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004). Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007).

## DISCUSSION

### I. HOSTILE WORK ENVIRONMENT

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." *See* 42 U.S.C. § 2000e–2(a)(1). This statutory provision prohibits subjecting an employee to a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986); *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007). It is well settled that Title VII does not serve as a "general civility code" and is not meant to remedy "the ordinary tribulations of the

workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) ("Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* ... because of ... sex.") (emphasis and paraphrasing in original); *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012).

To establish a prima facie case of a sexually hostile work environment, a plaintiff must prove: (1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment. *Harsco Corp.*, 475 F.3d at 1186. "[There] is not, and by its nature cannot be, a mathematically precise test" for a hostile work environment claim. *Hernandez*, 684 F.3d at 957 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000) ("[t]here is no 'magic number' of incidents required to establish a hostile environment."). In determining whether the alleged sexual harassment rises to an actionable level, the Court must examine the totality of circumstances, which may include "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance such as the nature of the sexual advances and the context in which the alleged incidents occurred." *Harris*, 510 U.S. at 23.[6] There is also both an objective and subjective component to a hostile work environment claim:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*See id.* at 21-22.

STS is not vicariously liable for Chase's harassment if it can establish the affirmative defense announced in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). *See Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 745 (10th Cir. 2014). When the

---

[6] In fact, a court is required to consider unreported incidents in determining whether a hostile work environment existed. *DiStasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62-63 (2d Cir. 1998) ("[U]nreported incidents of harassment alleged by the plaintiff regarding the issue of hostile work environment, whether or not an explanation for the failure to report is proffered, stand on the same footing as reported incidents; both must be taken as true at the summary judgment stage.").

employee is not subject to a "tangible employment action,"⁷ the employer may establish the defense by proving two elements: (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Kramer*, 743 F.3d at 745. STS "bears the burden to prove both prongs of the defense by a preponderance of the evidence." *Id*. at 746.⁸ This requires STS to "prove both that it acted reasonably in preventing and correcting harassment and that [Cunningham] unreasonably failed to act by not utilizing complaint opportunities. [STS] will lose this defense if it fails either prong." *Id*. (quotation omitted).

Viewing the evidence in its totality, the Court is persuaded that a reasonable trier of fact could conclude the conduct at issue was severe enough to create a hostile work environment. As noted above, the Court does not weigh the evidence at the summary judgment stage and must construe all facts and inferences in the light most

---

⁷ Examples of tangible employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.

⁸ "To 'establish by a preponderance of the evidence' means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in this Court's mind the belief that what is sought to be proved is more likely true than not true." *Merzon v. County of Suffolk*, 767 F.Supp. 432, 444-45 (E.D.N.Y. 1991) (internal citations omitted); *see also Metropolitan Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n. 9 (1997).

favorable to Cunningham. Here, Chase's actions of pinning Cunningham to the ground, putting his hand up her shirt and pulling her pants down, rises to the same level of severity as sexual assault, and carried patent levels of sexual overtones. Even putting Chase's comments aside, the Supreme Court has repeatedly noted that a claim of discrimination based on the infliction of a hostile working environment exists if the conduct is severe *or* pervasive. *See Ellerth*, 524 U.S. at 752; *Faragher*, 524 U.S. at 786; *Harris*, 510 U.S. at 21; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

As the Seventh Circuit Court of Appeals observed: "[a]lthough less severe acts of harassment must be frequent or part of a pervasive pattern of objectionable behavior in order to rise to an actionable level, 'extremely serious' acts of harassment do not." *Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir. 1999). This statement is in accord with the Supreme Court's instruction that an isolated incident will not amount to discriminatory changes in the terms and conditions of employment "unless extremely serious." *Faragher*, 524 U.S. at 788. Indeed, a number of federal courts, including the Tenth Circuit, have either allowed for or acknowledged the viability of sexual harassment claims based on conduct similar in its severity. *See, e.g., Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998) (finding a "single incident" in which a customer pulled a waitress by the hair, grabbed her breast, and placed his mouth on it severe enough to create an actionable

11

hostile work environment); *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1243-44 (10th Cir. 2001) (holding that "[w]hile there was only one incident, it was objectively abusive, dangerous, and humiliating, and [plaintiff] was so traumatized she was unable to return to work thereafter."); *Gerald v. Locksley*, 849 F. Supp. 2d 1190, 1232 (D.N.M. 2011) ("Rape and other forms of severe sexual assault are the archetypical examples of single incidents which can establish a hostile work environment.").[9]

The Court also finds that the *Faragher/Ellerth* defense does not shield STS from liability for two reasons. First, the evidence supports a finding that Cunningham suffered a tangible employment action. When she expressed interest in keeping her job, Cunningham was told instead to seek unemployment and was later

---

[9] *See also Fall v. Indiana Univ. Bd. of Trustees*, 12 F. Supp. 2d 870, 879 (N.D. Ind. 1998) (single incident where supervisor "forcibly grabbed and kissed the Plaintiff while forcing his hand inside her blouse to grope her breasts, a very private and intimate part of a woman's body" could constitute hostile work environment; noting that "while the fact remains that the Plaintiff has alleged only a single, isolated incident of sexual harassment, the Seventh Circuit has clearly indicated that a single incident of harassment may support an actionable hostile environment claim."); *Redman v. Lima City Sch. Dist. Bd. of Educ.*, 889 F.Supp. 288, 293 (N.D. Ohio 1995) (finding incident where defendant forced plaintiff against wall and fondled and rubbed her in a sexual manner was "an example of extremely severe sexual harassment. … In addition, plaintiff was subjected to lesser forms of sexual harassment. … Although these other incidences in themselves may not rise to an actionable level when they occur over a period of short duration, in combination with the physical assault, I conclude that a rational fact-finder could conclude that plaintiff was subjected to sex-based conduct that was so severe and pervasive that she could prevail on her hostile environment claim.").

terminated. Second, because Cunningham complained within a short time period, the evidence supports a finding that she did not "unreasonably fail" to take advantage of STS's complaint procedures. Subsequent decisions construing the *Faragher/Ellerth* defense, however, suggest that it may be available to a defendant even when a plaintiff promptly lodges a complaint. In *McCurdy v. Arkansas State Police*, which is cited by STS, the Eighth Circuit dealt with the problem of applying the *Faragher/Ellerth* defense in a case involving a single incident of harassment and where the employee promptly complained. 357 F.3d 762 (8th Cir. 2004), *cert. denied*, 543 U.S. 1121 (2005). The court first distinguished the facts of *Faragher* and *Ellerth* on the ground that, when "craft[ing] the two-prong affirmative defense to strict liability, [the Supreme Court] was not addressing an employer who takes swift and effective action the minute it learns of a single incident of supervisor sexual harassment." *Id*. at 771. Rather, both cases dealt with harassment that persisted without complaint over a long period of time.

The Eighth Circuit then held that, in light of the Supreme Court's earlier ruling in *Meritor Savings Bank FSB v. Vinson*, cited *supra*, an employer is not strictly liable for supervisor harassment absent a tangible employment action, the defendant was "entitled to a modified [*Faragher/Ellerth*] affirmative defense, despite the [defendant's] inability to prove the second element." *McCurdy*, 357 F.3d at 771-72.

The Court reasoned that to deny the defendant the availability of the *Faragher/Ellerth* defense would be essentially to impose strict liability. *Id*. at 774.

However, in *Harrison v. Eddy Potash, Inc*., 248 F.3d 1014 (10th Cir. 2001), the Tenth Circuit noted it had rejected the "modified [*Faragher/Ellerth*] defense" and held that "there is no reason to believe that the 'remarkably straightforward' framework outlined in *Faragher* and [*Ellerth*] does not control all cases in which a plaintiff employee seeks to hold his or her employer vicariously liable for a supervisor's sexual harassment"). *See id*. at 1025-26. Also, in *Chapman v. Carmike Cinemas*, 307 F. App'x 164 (10th Cir. 2009) (unpublished), cited by STS, the circuit court acknowledged *McCurdy* but noted its continued requirement that the employer prove the employee did not promptly report the single-incident offense before the employer may avail itself of the *Faragher/Ellerth* defense. *See id*. at 170.

Accordingly, although the facts support a finding that STS exercised reasonable care to prevent and correct any sexually harassing behavior, it has not shown by a preponderance of the evidence that Cunningham unreasonably failed to take advantage of any preventive or corrective opportunities to avoid harm otherwise. Viewing the evidence in the light most favorable to Cunningham, the Court finds the *Faragher/Ellerth* defense inapplicable under the circumstances. STS's Motion is denied on this issue.

## II. RETALIATION

In the Tenth Circuit, a plaintiff bringing a retaliation claim "must establish that retaliation played a part in the employment decision and may choose to satisfy this burden in two ways." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (citing *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224-25 (10th Cir. 2008)). Under the "direct/mixed motives" approach, "the plaintiff may directly show that retaliatory animus played a 'motivating part' in the employment decision." *See id*. If the plaintiff can prove that retaliatory animus was a motivating factor, the burden shifts to the employer to demonstrate that it would have taken the same action irrespective of the retaliatory motive. *See id*.

If the plaintiff cannot directly establish that retaliation played a motivating part in the employment decision, she may instead rely on the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to prove retaliation indirectly. *Twigg*, 659 F.3d at 998. Under the *McDonnell Douglas*/indirect approach, to establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *See id*.; *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). "To be materially adverse, an action must

15

be sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination. This requires injury rising to a level of seriousness. While the employer's conduct need not affect the terms and conditions of employment, the inquiry is an objective one, and not based on a plaintiff's personal feelings." *See id*. (internal citations, quotations and paraphrasing omitted). If the plaintiff establishes a prima facie case, the employer must then offer a legitimate, nonretaliatory reason for its decision. *Twigg*, 659 F.3d at 998. Finally, once the employer has satisfied this burden of production, the plaintiff must show that the employer's reason is merely a pretext for retaliation. *Id*.

STS contends that Cunningham cannot make a prima facie case under *McDonnell Douglas* in that she cannot rebut STS's legitimate, non-retaliatory reasons for terminating her position, namely, that the Oklahoma City office was struggling financially and was suffering substantial losses.[10] In response, Cunningham, in conclusory fashion, contends STS "terminat[ed] her employment for reporting the sexual assault committed by [Chase]" and STS has produced no documents evidencing its reasoning to terminate Cunningham's position or to close the Oklahoma City office. *See* Pl. Resp. Br. at 11, 15. Although the Court acknowledges Cunningham's contentions, at this stage, she has the burden to present

---

[10] For purposes of summary judgment only, STS concedes that the first and second elements have been met.

sufficient evidence in specific, factual form to establish a genuine factual dispute, as noted above. *See Bacchus Indus.*, 939 F.2d at 891. She may not rest upon mere allegations or denials; rather, she must go beyond the pleadings and establish, through admissible evidence, there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor*, 358 F.3d at 786. Unsupported conclusory allegations do not create an issue of fact. *Finstuen*, 496 F.3d at 1144.

To this end, Cunningham has not carried her burden of showing the proffered reasons for the termination of her position were mere pretext. STS's Motion on this issue is therefore granted.

### III. GENDER DISCRIMINATION

To establish a prima facie case of gender discrimination, a plaintiff must show: (1) she is a member of a protected category; (2) she was otherwise qualified for the position at issue and was performing her job in a satisfactory manner; (3) an adverse action was taken against her; and (4) a similarly situated person outside the protected class was treated differently than she was treated. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). Absent direct evidence of discrimination, claims of gender discrimination are analyzed under the *McDonnell Douglas* framework. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013) (noting that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.") (citation omitted).

For the reasons stated above, the Court finds summary judgment should be granted on this issue. Cunningham makes no serious effort to contend that a similarly situated male (here, Chase) was treated differently than she was treated. To the extent Cunningham's response can be construed to make such an argument, such attempt is perfunctory at best and not sufficiently developed to warrant consideration.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. Defendant's Motion as to Plaintiff's claims for retaliation and gender discrimination is **GRANTED**. Defendant's Motion as to Plaintiff's claim for hostile work environment is **DENIED**.

**IT IS SO ORDERED** this 29th day of September 2017.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE